Haytham Faraj, Esq. (SBN 291416)
Katherine Melik-Stepanyan, Esq. (SBN 315015)
**THE LAW OFFICES OF HAYTHAM FARAJ**
8605 Santa Monica Blvd, Suite 44953
West Hollywood, CA 90069
Telephone (805) 272-4001
Facsimile (805) 719-6858
Email: service@farajlaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DIANNA SCOTT, an Individual; KEATON EDWARD MONROE, an Individual, <br><br> Plaintiffs, <br><br> vs. <br><br> KERN COUNTY HOSPITAL AUTHORITY, a public entity; and DOES 1 through 50, individually, jointly and severally, <br><br> Defendants. | CASE NO.: <br><br> **COMPLAINT FOR DAMAGES:** <br><br> 1. **FAILURE TO PROTECT FROM HARM – (42 U.S.C. § 1983)** <br> 2. **FAILURE TO PROVIDE MEDICAL AND MENTAL HEALTH CARE – (42 U.S.C. § 1983)** <br> 3. **MUNICIPAL LIABILITY - UNLAWFUL POLICIES, PRACTICES, AND/OR CUSTOMS (42 U.S.C. § 1983)** <br> 4. **VIOLATION OF PLAINTIFFS' RIGHTS TO FAMILIAL RELATIONSHIP - (42 U.S.C. § 1983)** <br> 5. **VIOLATION OF PLAINTIFFS' RIGHTS TO FAMILIAL ASSOCIATION - (42 U.S.C. § 1983)** <br> 6. **SURVIVAL ACTION** <br><br> **DEMAND FOR JURY TRIAL** |

1

**COMPLAINT FOR DAMAGES**

**COMPLAINT FOR DAMAGES**

1.    Plaintiffs DIANNA SCOTT and KEATON EDWARD MONROE, individually, and as successors in interest to Decedent STEPHEN INGLE (hereinafter "DECEDENT" and/or "MR. INGLE") (collectively hereinafter "PLAINTIFFS") allege in their Complaint against Defendant KERN COUNTY HOSPITAL AUTHORITY, a public entity (hereinafter "KCHA") and DOES 1 through 50 as follows:

2.    This action seeks compensatory and punitive damages from Defendants for violations state law and fundamental rights under the United States Constitution in connection with the wrongful death of DECEDENT on March 29, 2023.

**INTRODUCTION**

3.    DECEDENT Stephen Ingle, a beloved father and son, died on March 29, 2023 as a result of Defendants' carelessness and negligence.

4.    On March 1, 2023, DECEDENT was arrested by Bakersfield Police Department and incarcerated at Kern County Jail, Central Receiving Facility ("CRF") in Bakersfield, California.

5.    On March 4, 2023, Kern County Sheriff's Office ("KCSO") deputy sheriffs found Mr. Ingle lying, fully clothed, on the floor outside of the shower with a laceration to the left side of his head. Mr. Ingle stated that he slipped while attempting to step into the shower.

6.    KCSO deputy sheriffs sent Mr. Ingle by ambulance to Kern Medical Center where he received medical treatment and received eight stitches on the left side of his head.

7.    Approximately four hours after receiving medical treatment, Mr. Ingle was transported back to CRF.

8.    Once he arrived at CRF, deputy sheriffs placed Mr. Ingle back in the same communal cell, cell A3-5.

9.    At approximately 4:45 P.M. on March 4, 2023, KCSO deputy sheriffs found Mr. Ingle hung in the shower of the communal cell with a jail-issued bedsheet tied around his neck. When EMS arrived on the scene, Decedent Stephen Ingle was found unconscious and without a pulse. Between transport and arrival to Adventist Health Bakersfield, decedent Stephen Ingle was revived and

2

**COMPLAINT FOR DAMAGES**

subsequently admitted into the ICU. He suffered severe hypoxia and cardiac arrest. As a result, DECEDENT was placed on life support and ultimately died on March 29, 2023.

## JURISDICTION AND VENUE

10. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

11. This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

12. Venue over Plaintiffs' claims is proper in this Court under 28 U.S.C. § 1391(b) and (c), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in, the County of Kern, California.

## PARTIES

13. At all relevant times and up until his death, DECEDENT was an individual residing in the County of Kern, California.

14. At all relevant times herein, Plaintiff DIANNA SCOTT was an individual residing in the City of Bakersfield, County of Kern, California and is the biological mother of DECEDENT. DIANNA SCOTT sues in her individual capacity and as a wrongful death Plaintiff pursuant to California *Code of Civil Procedure* § 377.60 and 42 U.S.C. sections 1983 and 1988.

15. Plaintiff DIANNA SCOTT alleges that she was a dependent of DECEDENT, pursuant to Section 377.60(b), who provided the necessities of life, which included, but was not limited to, income used towards paying for rent, food, utilities, living expenses, and etc., for which she is now deprived.

16. At all relevant times herein, Plaintiff KEATON EDWARD MONROE was an individual residing in the City of Bakersfield, County of Kern, California and is the natural and legal son of DECEDENT. KEATON EDWARD MONROE sues in his individual capacity and as a wrongful death

3

**COMPLAINT FOR DAMAGES**

Plaintiff pursuant to California *Code of Civil Procedure* § 377.60 and 42 U.S.C. sections 1983 and 1988.

17.     Defendant KERN COUNTY HOSPITAL AUTHORITY ("KCHA") is and was at all times mentioned herein a special health authority organized and existing pursuant to Division 101, Part 4, Chapter 5.5 of the California *Health & Safety Code,* which employs other Doe Defendants in this action. KCHA has its principal place of business in the City of Bakersfield, County of Kern, State of California. KCHA owns and operates Kern Medical Center in the City of Bakersfield, County of Kern, State of California. KCHA employes other Doe Defendants in this action. KCHA, is and was responsible for ensuring the safety of all persons incarcerated at the county jails, including CRF, and providing them appropriate medical and mental health treatment.

18.     Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 50 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

19.     The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 50 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 50 include medical personnel employed by the KCHA, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. Upon information and belief, DOES 1 through 50 were and still are residents of the County of Kern, California.

20.     At all times relevant Defendants DOES 1 through 50, and each of them, inclusive, were duly authorized employees and agents of Defendants, who were acting under color of law within the course and scope of their individual and/or representative capacities and respective duties as deputies

**COMPLAINT FOR DAMAGES**

and law enforcement agents and with the complete authority and ratification of their principal, Defendant KCHA. In doing the acts and failing and omitting to act as hereinafter described, Defendants At all times relevant Defendants DOES 1 through 50, and each of them were acting on the implied and actual permission and consent of KCHA.

21.    At all times relevant to the facts alleged herein, Defendants, including DOES 1 through 50, and each of them, are duly appointed, qualified and acting officers, employees, and/or agents of KCHA, employed as such by Defendants, and acting within the course and scope of their employment and/or agency and under color of state law. Each of the Defendants and Doe Defendants caused and is responsible for the unlawful conduct and resulting by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so by authorizing, acquiescing, condoning, acting, omitting or failing to take action to prevent the unlawful conduct by promulgating or failing to promulgate policies and procedures pursuant to which the unlawful conduct occurred: by failing and refusing, with deliberate indifference to Plaintiffs' and/or DECEDENT's rights, to initiate and maintain adequate supervision, training, compliance with responsibilities and duties, and staffing: by failing to maintain proper and adequate policies, procedures and protocols: and by ratifying and condoning the unlawful conduct performed by agents and officers, personnel, and employees under their direction and control.

22.    Each of the Defendants caused and is responsible for the unlawful conduct and resulting, by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so; by authorizing, acquiescing or failing to take action to prevent the unlawful conduct; by promulgating policies and procedures pursuant to which the unlawful conduct occurred; by failing and refusing, with deliberate indifference to Plaintiffs and DECEDENT'S rights, to initiate and maintain adequate supervision and/or training; and, by ratifying the unlawful conduct that occurred by agents and peace officers under their direction and control.

23.    The acts and omissions of all Defendants were at all material times pursuant to the actual customs, policies, practices, and/or procedures of the Kern County Hospital Authority.

**COMPLAINT FOR DAMAGES**

24.    Plaintiffs will seek leave to amend this complaint to show the true names and capacities of DOES 1- 50 when they have been ascertained. Plaintiffs are informed and believe, and thereon allege that each of these DOES Defendants are responsible in some manner for the events, transactions, or arrangements described in this Complaint, and for the injuries and damages which occurred as a result.

25.    Whenever and wherever reference is made in this Complaint to any act by a Defendant, such allegation and reference shall also be deemed to mean the acts and failures to act of each Defendant individually, joint, and severally. They are sued in their individual and official capacities and in some manner are responsible for the acts and omissions alleged herein.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

26.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

27.    Mr. Ingle was just 38 years old at the time of his death.

28.    On March 1, 2023, Mr. Ingle was arrested by Bakersfield Police Department and incarcerated at Kern County Jail, Central Receiving Facility ("CRF") in Bakersfield, California.

29.    Upon information and belief, on March 1, 2023, Mr. Ingle was evaluated at KCHA's Kern County Medical for medical clearance for initial booking.

30.    Upon information and belief, on March 1, 2023, Mr. Ingle was evaluated by KCHA medical nurse, DOE 1 for an initial intake and/or medical screening.

31.    Upon information and belief, KCHA medical staff, such as the receiving nurse, were informed of and/or knew at the time of booking that Mr. Ingle had a significant medical history involving prescription medication and/or was taking certain medications. Even prior to the time the Mr. Ingle was booked into CRF, KCHA had both actual and constructive knowledge that Mr. Ingle had suffered from substance use dependence because Decedent's Kern Medical Center medical chart indicated substance abuse dependence and was last updated on February 27, 2022, prior to Mr. Ingle's initial booking. KCHA also knew and/or had constructive knowledge of the fact that Mr. Ingle had previously been medically treated at Kern Medical Center for drug therapy.

**COMPLAINT FOR DAMAGES**

32.     Upon information and belief, On March 1, 2023, upon the initial booking, even though KCHA's personnel, DOES 1 through 50, and each of them, knew that Mr. Ingle suffered from ongoing drug therapy for substance abuse, Mr. Ingle "cleared" him for jail, without any immediate follow-up plan to frequently monitor the Decedent's condition, without any orders to jail staff to closely monitor the Decedent, and without conducting a proper battery of tests, all of which was done with negligence, recklessness, and/or deliberate indifference to the Decedent's serious medical needs. Defendants knew or had reason to know that Mr. Ingle's medication "Suboxone" and imminent substance withdrawals caused dangerous "side effects." Defendants were aware of Decedent's treatment for substance use pursuant to Decedent's Kern Medical Center medical chart which was last updated on February 27, 2022 prior to Mr. Ingle's initial booking.

33.     On March 2, 2023, at 8:27 p.m., Mr. Ingle was medically evaluated following a "man down" call at Mr. Ingle's cell wherein Mr. Ingle reported that he was suffering from withdrawal symptoms.

34.     Upon information and belief, on March 2, 2023, Mr. Ingle was evaluated by KCHA medical nurse, DOE 2 and cleared to remain housed at the CRF.

35.     On March 3, 2023, Mr. Ingle refused to attend court due to feeling ill. Although Mr. Ingle declined medical attention, his documented withdrawal symptoms and deteriorating state should have prompted immediate medical intervention.

36.     On March 4, 2023, while Mr. Ingle was in custody in a communal cell with seven (7) other inmates at CRF, KCSO deputy sheriffs responded to Mr. Ingle's cell and found Mr. Ingle lying, fully clothed, on the floor outside of the shower with a laceration to the left side of his head. Mr. Ingle stated that he slipped while attempting to step into the shower.

37.     KCSO deputy sheriffs sent Mr. Ingle by ambulance to KCHA's Kern Medical Center where he received medical treatment and received eight stitches on the left side of his head.

38.     Upon information and belief, on March 2, 2023, Mr. Ingle was evaluated by KCHA medical nurse, DOE 3, upon his return from Kern Medical Center and was cleared to remain housed at the CRF.

**COMPLAINT FOR DAMAGES**

39.     Approximately four hours after receiving medical treatment, Mr. Ingle was transported back to KCJ. Once he arrived at KCJ, deputy sheriffs placed Mr. Ingle in the same communal cell he was in earlier in the day, cell A3-5.

40.     At approximately 4:45 P.M. on March 4, 2023, KCSO deputy sheriffs responded to cell A3-5 and found Mr. Ingle hung in the shower of the communal cell with a jail-issued bedsheet tied around his neck.

41.     When EMS arrived on the scene, decedent Stephen Ingle was found unconscious and without a pulse.

42.     Between transport and arrival to Adventist Health Bakersfield, decedent Stephen Ingle was revived and subsequently admitted into the ICU. He suffered severe hypoxia and cardiac arrest.

43.     As a result, Decedent Stephen Ingle was placed on life support and ultimately died on March 29, 2023.

44.     Upon information and belief, Defendant KCHA is responsible for hiring, training and assigning skilled nurses at the CRF jail infirmary. Because a reasonably well-trained nurse should understand the risk of an inmate suffering from ongoing withdrawals, and should not disregard the necessary treatment, Defendant KCHA's inadequate training placed a nurse without sufficient training for handling potential severe conditions into a triage-type position.

45.     Defendant KCHA's action of selecting and placing DOES 1 through 50, and each of them, in a nursing position at the CRF infirmary demonstrates that its training and supervision was not adequate to train its staff to handle usual and recurring situations.

46.     Defendant KCHA's lack of training and supervision led to DOES 1 through 50, and each of them, failure to establish a plan to provide regular checks on Decedent after initial booking.

47.     Defendant KCHA's policies and procedures led to Defendant DOES 1 through 50, and each of them, choice to ignore the need for further evaluation of a potential withdrawal symptoms, and instead to return Decedent back to a cell without appropriate evaluation and treatment.

8

**COMPLAINT FOR DAMAGES**

48.    Following Mr. Ingle's death, KCSO's death review panel acknowledged and recommended that inmates should be referred for mental health services when identified as suffering from withdrawals from alcohol and/or drugs.

49.    STEPHEN INGLE was a pretrial detainee, and therefore, innocent until proven guilty.

50.    This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

### *Kern County's History of Custodial Deaths at its Detention Facilities*

51.    Since the January 1, 2023 enforcement of the In-Custody Death Reporting requirement, there have been ten (10) reports of custodial deaths at Kern County detention facilities. Of the ten (10) reported custodial deaths, two (2) pre-dated Mr. Ingle's detention at KCJ: one on January 20, 2023 at the Kern County Pre-Trial Facility of a 42-year-old Asian Male by hanging/strangulation; and another on February 3, 2023 at the Kern County Pre-Trial Facility of a 24-year-old Hispanic Male by hanging/strangulation.

52.    Defendants KCHA's custody, medical and mental health staff, and each of them, had been on notice for years that their provision of medical and mental health treatment to inmates at the county jails were inadequate and resulted in needless harm and death.

53.    Defendants KCHA's supervisors, custody, medical and mental health staff, and each of them knew or should have known of a history of years of notice of ongoing failure to provide inmates indicated and timely reasonable medical/mental health care, knew or should have known of inadequate and/or incompetent staffing, insufficient and inadequate cells and beds, incompetent and inadequate provision of health care and delivery thereof, denying access to outside hospitals or other mental health programs, failure to take corrective measures, including ignoring judicial orders to abate or take corrective action regarding medical and mental health care to inmates and detainees, notice from quality assurance and death reviews, from litigation alleging failure to provide reasonable medical and mental health care, and from publications of endemic, ongoing and unabated risks of injury or death to inmates. The number of lawsuits against the county and KCHA and throughout the state and the

**COMPLAINT FOR DAMAGES**

evidence available from those actions is troubling and demonstrative of Defendants' years of deliberate indifference to known ongoing hazards to ill detainees and their failure to take corrective action.

54. At all relevant times herein, Defendants, each of them individually and/or collectively, caused, ratified or acquiesced in the constitutional deprivation, or were negligent with respect the conditions that proximately caused Decedent's death and Plaintiffs' injuries including, without limitation, the hiring, training, supervising, disciplining and retaining those responsible for Decedent. As an actual, legal and proximate result of said Defendants' ratification, acquiescence, deliberate indifference, Decedent was deprived of his constitutional rights under the due process clause of the Fourteenth Amendment.

55. Based on the aforementioned, Defendants custody, medical and mental health staff, and each of them, knew of the dangers that posed a risk to Decedent's safety, yet disregarded these dangers resulting in his death.

56. As an actual, legal and proximate result of the wrongful conduct of Defendants, Mr. Ingle died and Plaintiffs have suffered, and continues to suffer, general and special damages, including but not limited to wrongful death damages.

57. The conduct Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and therefore warrants the imposition of exemplary and punitive damages against each and every aforementioned Defendants.

## FIRST CAUSE OF ACTION

### FAILURE TO PROTECT FROM HARM - 42 U.S.C. § 1983

**(Plaintiffs Against DOES 1 through 50)**

58. Plaintiffs re-allege and incorporates by reference each and every allegation contained in this complaint, as though fully set forth herein.

59. By the actions and omissions described above, DOES 1-50, acting under the color of state law in their individual capacities, deprived Mr. Ingle as a pretrial detainee of the rights, privileges, and immunities secured by the Fourteenth Amendment by subjecting him, or through their deliberate

10

**COMPLAINT FOR DAMAGES**

indifference, allowing others to subject him, to delay and denial of access to medical care for a serious medical condition.

60.     DOES 1 through 50 had a duty to provide Mr. Ingle reasonable security and safe, appropriate housing and monitoring to accommodate his medical conditions.

61.     As a result of the Defendants' deliberate indifference to Mr. Ingle's need for medical care and treatment, Plaintiffs suffered damages and deprivation of constitutional rights, as described herein.

62.     By the actions and omissions described above, the DOES 1 through 50 violated 42 U.S.C. § 1983, depriving Plaintiff and Decedent of the following well-settled constitutional rights that are protected by the Fourth, and Fourteenth Amendments to the U.S. Constitution:

   a.  The right to be free from deliberate indifference to MORRIS SEY-SCALIA's serious medical needs while in custody and confined in jail as a pretrial detainee, as secured by the Fourteenth Amendment;

   b.  The right to be free from wrongful governmental interference with familial relationships and Plaintiffs' right to companionship, society, and support, as secured by the Fourteenth Amendment.

63.     The listed Defendants' failure to intervene, prevent, or stop the constitutional violations by others, when Defendants were in a position to so intervene when such violations were occurring, also renders such Defendant(s) liable for these violations.

64.     Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff and Decedent of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions.

65.     As a proximate result of the foregoing wrongful acts and/or omissions, Plaintiff sustained injuries and damages, as set forth above and elsewhere. Plaintiffs are therefore entitled to general and compensatory damages in an amount to be proven at trial.

**COMPLAINT FOR DAMAGES**

66.    In committing the acts alleged above, the DOE Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights, safety, and emotional well-being of Plaintiff and Decedent, and by reason thereof, Plaintiff is entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983 and federal law against these individual Defendants; no punitive damages are sought directly against the municipal Defendants.

67.    Plaintiff is also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

## SECOND CAUSE OF ACTION

### FAILURE TO PROVIDE MEDICAL CARE, VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION – 42 U.S.C. § 1983

### (Plaintiffs Against Defendants DOES 1 through 50)

68.    Plaintiffs incorporate by reference herein, each and every allegation contained in all prior paragraphs of this complaint as if alleged fully herein.

69.    The due process clause accords pretrial detainees rights not enjoyed by convicted inmates. While a sentenced inmate may be punished in any fashion not cruel and unusual, the due process clause forbids punishment of a person held in custody awaiting trial but not yet adjudged guilty of any crime. Decedent, at the time of his death, was a pretrial detainee. Pretrial detainees are presumed innocent of any crime. Decedent asserts his right under 42 U.S.C. § 1983 for acts and omissions that deprived Decedent of his constitutional right against cruel and unusual punishment under the due process clause. The claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment, although pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment and generally apply, at a minimum, the same standards. (*Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Frost v. Agnos*, 152 F.3d 1124, 1128, (9th 1998); *Redman v. County of San Diego*, 942 F.2d 1435, 1441 (9th Cir. 1991).)

70.    By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, violated 42 U.S.C. § 1983, depriving Plaintiff of the following clearly established and well-settled

**COMPLAINT FOR DAMAGES**

constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution: Plaintiff's right to be free from deliberate indifference to Plaintiff's serious medical and mental health needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments.

71.    By the actions and omissions described above, Defendants DOES 1 through 50, as alleged herein, including but not limited to their failure to provide Mr. Ingle with appropriate emergency medical care and monitoring, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical and mental health care and life saving care to persons in their custody, constituted deliberate indifference to Mr. Ingle's serious medical and mental health needs, health, and safety.

72.    On March 1, 2023, upon the initial booking, even though DOES 1 through 50 knew that Mr. Ingle suffered from ongoing drug therapy for substance abuse, Mr. Ingle was "cleared" for jail, without any immediate follow-up plan to frequently monitor the Decedent's condition, without any orders to jail staff to closely monitor the Decedent, and without conducting a proper battery of tests, all of which was done with negligence, recklessness, and/or deliberate indifference to the Decedent's serious medical needs. DOES 1 through 50 N knew or had reason to know that Mr. Ingle's medication "Suboxone" and imminent substance withdrawals caused dangerous "side effects." Defendants ere aware of Decedent's treatment for substance use pursuant to Decedent's medical chart which was last updated on February 27, 2022 prior to Mr. Ingle's initial booking.

73.    On March 4, 2023, Defendants, despite knowing that Mr. Ingle was suffering from ongoing withdrawals from fentanyl and other substances, made the intentional decision to deny Mr. Ingle the proper medical care by placing Mr. Ingle back in cell A3-5, without any special monitoring regarding his mental health. Mr. Ingle needed immediate medical care to address his potential suicidal condition stemming from his ongoing withdrawal; however, Defendants did not provide Mr. Ingle with any particular safeguarding measures.

74.    Based on the foregoing, Defendants, and each of them, failed to take reasonable actions to summon medical care and failed to take reasonable measures to reduce Mr. Ingle's risk of hurting

13

**COMPLAINT FOR DAMAGES**

himself as a consequence of his deteriorating mental and medical condition and by not taking such measures, Defendants, and each of them, caused Mr. Ingle's death.

75. As a direct and proximate result of Defendants DOES 1-50's acts and/or omissions as set forth above, Mr. Ingle, sustained injuries and damages.

76. As a proximate result of the incident described herein above, DECEDENT was caused significant compensatory damages and he endured enormous conscious pain and suffering pre-death, which Decedent would have been able to recover for, had he lived.

77. By DECEDENT's death, DECEDENT left various relatives, including Plaintiffs herein, the DECEDENT's successors in interest and Plaintiffs are entitled to "step into Decedent's shoes" to pursue an action "in his place," for damages. As a result, Plaintiffs are entitled to proceed, and hereby does proceed, as DECEDENT's successor in interest for all damages set forth herein above which were sustained by Decedent pre-death, or as a result of death, as well as other damages permitted by law as a result of this incident.

78. By reason of the foregoing, Plaintiffs incurred damages in sums which exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction, which amounts will be shown according to proof at the time of trial. Plaintiffs are entitled to such damages from Defendants and each of them.

**THIRD CAUSE OF ACTION**

**MUNICIPAL LIABILITY - (42 U.S.C. § 1983)**

**UNLAWFUL POLICIES, PRACTICES, AND/OR CUSTOMS**

**(Plaintiffs Against All Defendants)**

79. Plaintiffs repeat and re-allege each allegation in all the preceding paragraphs of this Complaint with same force and effect as if fully set forth herein.

80. Plaintiffs alleges that the unconstitutional actions and/or omissions of the personnel acting on behalf of KCHA, were pursuant to the following customs, policies, practices and/or procedures of KCHA, stated in the alternative, which were directed, encouraged, allowed, and/or

14

**COMPLAINT FOR DAMAGES**

ratified by policy making officials for KCHA, including, but not limited to, DOE Defendants 1 through 50:

    a.  To deny pretrial detainees at the Kern County jails access to appropriate, competent, and necessary care for serious medical needs, including by failing to allocate sufficient resources for medical care in its Jail and failing to adequately staff its Jail with sufficient competent and trained medical professionals, including Medical Doctors, and by failing to require that all medical staff and supervisors at the jail be properly trained, supervised, credentialed, and licensed as required by law;

    b.  To fail to properly classify, house, and/or monitor inmates suffering from medical conditions, including placement in safe cells, with safe and appropriate bedding under the circumstances, including failing to consider in any way the clear and obvious danger of placing inmates at risk of injury, self-inflicted or accidental, in cells with means to injure themselves;

    c.  To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs above, when the need for such was obvious, with deliberate indifference to the rights and safety of Plaintiff, Decedent, and the public, and in the face of an obvious need for such policies, procedures, and training programs.

81.    In the alternative Defendant KCHA may have instituted policies or training addressing some or all the topics listed above, but with deliberate indifference to citizens' rights, failed to properly oversee, enforce, and/or properly carry out such policies and/or training.

82.    The above-described customs, policies, practices, and/or procedures of KCHA were a moving force and/or a proximate cause of the deprivations of Plaintiff's and Decedent's constitutional rights, in violation of 42 U.S.C. § 1983.

**COMPLAINT FOR DAMAGES**

83.     Defendant KCHA is also liable for the violations of Plaintiff's and Decedent's rights by their final policy makers, including DOES 1-50, as described above. (See, Ninth Circuit Model Civil Jury Instruction 9.6).

84.     The aforementioned customs, policies, practices, and procedures; the failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and, the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants were a moving force and/or a proximate cause of the deprivations of Plaintiffs' and Decedent's clearly established and well-settled constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above and elsewhere.

85.     As a direct and proximate result of the foregoing unconstitutional actions, omissions, customs, polices, practices, and/or procedures of Defendants KCHA and DOES 1 through 50, or the lack or inadequacy thereof, Plaintiffs sustained serious and permanent injuries and damages, and is entitled to damages, penalties, costs, and attorneys' fees, as set forth above and elsewhere.

86.     The conduct complained about in the First Causes of Action, and incorporated by reference herein, was "an official policy or custom" meaning, without limitation, a rule or regulation created, adopted, or ratified by Defendants KCHA and DOES 1 through 50; or a policy statement or decision made by Defendants KCHA and DOES 1 through 50 policy-makers including, without limitation; a practice or course of conduct that is so widespread that it has acquired the force of law even if the practice has not been formally approved. Further, and without limitation:

a. Defendants KCHA and DOES 1 through 50 had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation suffered. This included, without limitation, the conduct alleged in First Cause of Action; and/or,

b. Alternatively, municipal liability may be imposed where the local government unit's omission led to the constitutional violation by its employee. (*Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1186 (9th Cir. 2002). Under this route, Defendants KCHA and DOES 1 through 50's deliberate indifference led to its omission and conduct and that the omission and conduct caused the employees to commit the constitutional violation. Defendants KCHA

**COMPLAINT FOR DAMAGES**

and DOES 1 through 50 were on actual or constructive notice that its omissions would likely result in a constitutional violation, as alleged in First Causes of Action, above.

87.    KCHA maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs set forth above and, based upon the principles set forth in *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978), and *City of Canton, Ohio v. Harris,* 489 U.S. 378(1989), and, that policy, custom or practice was carried out by Defendant so that Decedent was deprived of his constitutional right to personal security under the due process clause of the Fourteenth Amendment.

88.    Plaintiffs allege that the unconstitutional actions and/or omissions of the personnel acting on behalf of KCHA and DOES 1 through 50, were pursuant to the following customs, policies, practices and/or procedures of KCHA and DOES 1 through 50, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officials for KCHA and DOES 1 through 50:

 a. Placing decedent Stephen Ingle back into the same communal cell after Mr. Ingle had confirmed symptoms of substance withdrawal;

 b. Failing to provide timely and effective medical care and attention for injured or ill inmates, which resulted in serious injury and loss of life;

 c. Failing to adequately monitor and provide for inmate ST. JOVITE's serious psychiatric and physical conditions, which resulted in serious injury and loss of life; failing to effectively monitor the quality of mental/medical care, attention and treatment provided to ill inmates;

 d. Failing to effectively monitor the adequacy of mental/medical and custodial staffing to ensure adequacy of medical care, treatment, and attention rendered to ill inmates;

 e. Failing to comply with the statutory guidelines and regulations enacted for the protection of persons held in custodial settings;

 f. Failing to have adequately trained staff;

17

**COMPLAINT FOR DAMAGES**

g. Denying pretrial detainees at the County jails access to appropriate, competent, and necessary care for serious medical needs, including by failing to allocate sufficient resources for medical care in its jail and failing to adequately staff its jail with sufficient competent and trained medical professionals, including Medical Doctors, and by failing to require that all medical staff and supervisors at the jail be properly trained, supervised, credentialed, and licensed as required by law;

h. Failing properly classify, house, and/or monitor inmates suffering from mental health disabilities and medical conditions, including placement in safe cells, with safe and appropriate bedding under the circumstances, including failing to consider in any way the clear and obvious danger of placing inmates at risk of injury, self-inflicted or accidental, in cells with means to injure themselves;

i. Failing to reasonably deploy staff to reasonably protect inmates;

j. Undertaking to furnish reasonable security for inmates but failing to do so with reasonable care, including without limitation failing to have an adequate number of guards, failure to properly deploy the personnel, failure to properly train personnel, failure to properly supervise personnel, failure to properly supervise the inmates, failure to take corrective measures, and such other conduct as may be disclosed by discovery or further investigation or analysis;

k. Failing to reasonably assess vulnerable inmates, such as without limitation, new inmates, inmates suffering from ongoing substance abuse issues/withdrawals, and/or mentally unstable inmates and take reasonable steps to protect them;

l. Undertaking to assess vulnerable inmates, such as without limitation, new inmates, inmates suffering from ongoing substance abuse issues/withdrawals, and/or mentally unstable inmates and failing to reasonably assess the or take reasonable steps to protect them;

18

**COMPLAINT FOR DAMAGES**

m. Failing to reasonably assess and segregate inmates, such as without limitation, new inmates, inmates suffering from substance abuse issues/withdrawals, and/or mentally unstable inmates and take reasonable steps to protect them;

n. Undertaking to assess and segregate inmates, such as without limitation, new inmates, inmates suffering from substance abuse issues/withdrawals, and/or mentally unstable inmates and failing to reasonably segregate or take reasonable steps to protect them;

o. Failing to properly design the facility, including without limitation, assure reasonable line of sight and surveillance of inmates;

p. Providing reasonable protection for pretrial detainees;

q. Performing and implementing the non-discretionary or ministerial function of protection inmates and implementing state policies governing furnishing inmate security, including without limitation these listed above and/or component or subpart thereof; and/or,

r. Additional negligence learned through discovery and investigation.

89. Defendants KCHA through their employees and agents, and through their policy-making supervisors, and DOES 1 through 50, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline DOES 1 through 50, and KCHA personnel, with deliberate indifference to the constitutional rights of decedent Mr. Ingle, Plaintiffs and others in similar positions, as described above, and therefore, those rights thereby violated.

90. On or about March 1, 2023, and for some time prior thereto and since that time, Defendants DOES 1-50 have either participated in, or known of, or must have known of their subordinates' deliberate indifference in denial of medical and mental health attention, and the denial of access to medical and mental health care and treatment to inmates, causing injuries or deaths.

91. Furthermore, on or before March 1, 2023, DOES 1 through 50 failed to supervise the medical services for arrestee-inmates, in that the facility failed to have adequate staffing of medical personnel, inadequate leadership and supervision, such that the medical services personnel,

**COMPLAINT FOR DAMAGES**

Does 1-50, failed to provide care or access to medical or mental health to inmate patients for serious but treatable medical and health conditions and operated without adequate safeguards, audits, or reporting requirements reviewable by supervisors.

92.    As a result of the lack of said accountability measures, numerous medical care providers for the county jail regularly delayed or denied medical and mental health care to inmate patients, and engaged in a pattern and practice of failing to see inmate patients for serious but treatable medical conditions, thereby violating the constitutional rights of patient-inmates, state and federal laws and departmental policy and procedure.

93.    The above-described customs, policies, practices, and/or procedures of KCHA were a moving force and/or a proximate cause of the deprivations of Plaintiff's and Decedent's constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above in the First Cause of Action.

94.    Both KCHA conducted investigations and reviews of this matter concerning the death of Mr. Ingle and DOES 1-50, directly and personally participated in such investigations and reviews. The unconstitutional actions and/or omissions of the individually named Defendants, DOES 1-50, other KCHA personnel, as described above, were approved, tolerated, and/or ratified by policy making officials for KCHA, including, but not limited to, DOES 1 through 50. Plaintiff is informed and believes, and thereupon alleges, the details of this incident have been revealed to the authorized policy makers within KCHA, and that such policymakers have direct knowledge of the fact that Mr. Ingle wrongfully died in CRF,  and was unlawfully denied necessary care for his serious medical needs due to their and their subordinates' deliberate indifference and violations of Decedents' rights. Notwithstanding this knowledge, the authorized policymakers within KCHA, have approved of the individually named Defendants' and DOES 1-50s' conduct and decisions in this matter to the extent such individuals were under their supervision and oversight, and have made a deliberate, conscious, and affirmative choice to endorse and ratify such conduct and decisions, and the basis for them, which resulted in the death of Mr. Ingle. By so doing, the authorized policymakers within KCHA have shown affirmative agreement with the conduct of individual Defendants and other employees/agents under

**COMPLAINT FOR DAMAGES**

their supervision, and have ratified the unconstitutional acts of these individual Defendants, employees, and agents.

95.     The aforementioned customs, policies, practices, and procedures; the failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and, the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants DOES 1 through 50 were a moving force and/or a proximate cause of the deprivations of Plaintiff's and Decedent's clearly established and well-settled constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above and elsewhere.

96.     By reason of the aforementioned acts and omissions, Plaintiffs suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT'S pain and suffering, loss of enjoyment of life, and death.

97.     As a direct and proximate result of the actions of Defendants, Plaintiffs have also suffered from the following injuries, including but not limited to: (a) loss of love, aide, comfort, future support, community, affection, society, presence, companionship, protection, consortium, counsel, contributions, accumulations, inheritance and right of inheritance of DECEDENT, according to proof; (b) Loss of economic support of DECEDENT; (c) Funeral and burial expenses according to proof; and (d) damages, penalties, costs and attorney's fees against KCHA.

## FOURTH CAUSE OF ACTION

### VIOLATION OF PLAINTIFFS' RIGHTS TO FAMILIAL RELATIONSHIP - 42 U.S.C. § 1983

### (Plaintiffs Against All Defendants)

98.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

99.     Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in their familial relationship with DECEDENT.

21

**COMPLAINT FOR DAMAGES**

100.    As a result of the failure of Defendants to properly supervise inmates at the KCJ, which created a dangerous condition and/or an unreasonable risk of harm to persons like Mr. Ingle, and the failure of Defendants to intervene, DECEDENT died. Plaintiffs were thereby deprived of their constitutional right to a familial relationship with DECEDENT.

101.    Defendants, individually and as sheriffs, acting under color of state law, thus violated the Fourteenth and Amendment rights of Plaintiffs to be free from unwarranted interference with their familial relationship with DECEDENT.

102.    The aforementioned actions of Defendants, individually and as sheriffs, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference, or acted with reckless disregard to the constitutional rights of DECEDENT and Plaintiffs, with the purpose to cause harm unrelated to any legitimate law enforcement objective.

103.    The conduct of Defendants, individually and as sheriffs, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT, and therefore warrants an award of punitive damages against Defendants in an amount adequate to punish the wrongdoers and deter future misconduct.

## FIFTH CAUSE OF ACTION

**VIOLATION OF PLAINTIFFS' RIGHTS TO FAMILIAL ASSOCIATION - 42 U.S.C. § 1983**

**(Plaintiffs Against All Defendants)**

104.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

105.    Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in their familial association with DECEDENT.

106.    Plaintiffs possessed attachment and commitment with DECEDENT. They shared a special community of thoughts, experiences, and beliefs, which was protected by their right to familial association, as guaranteed by the First Amendment to the Constitution of the United States.

22

**COMPLAINT FOR DAMAGES**

107.    As a result of the failure of Defendants to properly supervise inmates at the KCJ, which created a dangerous condition and/or an unreasonable risk of harm to persons like Mr. Ingle, DECEDENT died. Plaintiffs were thereby deprived of their constitutional right to a familial association with DECEDENT.

108.    The aforementioned actions of Defendants, individually and as sheriffs, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference, or acted with reckless disregard to the constitutional rights of DECEDENT and Plaintiffs, with the purpose to cause harm unrelated to any legitimate law enforcement objective.

109.    The conduct of Defendants, individually and as sheriffs, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT, and therefore warrants an award of punitive damages against Defendants in an amount adequate to punish the wrongdoers and deter future misconduct.

## SIXTH CAUSE OF ACTION

### SURVIVAL ACTION

### (Plaintiffs Against All Defendants)

110.    Plaintiffs incorporate by reference herein, each and every allegation contained in all prior paragraphs of this complaint as if alleged fully herein.

111.    As a proximate result of the incident described herein above, DECEDENT was caused significant compensatory damages and he endured enormous conscious pain and suffering pre-death, which Decedent would have been able to recover for, had he lived.

112.    By DECEDENT's death, DECEDENT left various relatives, including Plaintiffs herein, the DECEDENT's successors in interest and Plaintiffs are entitled to "step into Decedent's shoes" to pursue an action "in his place," for damages. As a result, Plaintiffs are entitled to proceed, and hereby does proceed, as DECEDENT's successor in interest for all damages set forth herein above which were sustained by Decedent pre-death, or as a result of death, as well as other damages permitted by law as a result of this incident.

23

**COMPLAINT FOR DAMAGES**

113.    By reason of the foregoing, Plaintiffs incurred damages in sums which exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction, which amounts will be shown according to proof at the time of trial. Plaintiffs are entitled to such damages from Defendants and each of them.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek damages as follows:

1.  Compensatory damages in an amount according to proof, which is fair, just, and reasonable;

2.  Punitive damages under  42 U.S.C. § 1983, federal and/or California law, in an amount according to proof and which is fair, just, and reasonable against all Defendants except the municipal Defendants;

3.  All other damages, penalties, costs, interest, and attorneys' fees, as allowed by  42 U.S.C. §§ 1983 and 1988; and as otherwise may be allowed by California and/or federal law;

4.  Interest; and

5.  For such other and further relief as the Court deems just and proper.

DATED:  March 28, 2025                    **THE LAW OFFICES OF HAYTHAM FARAJ**

By:  _____
                    HAYTHAM FARAJ, ESQ.
                    Attorneys for Plaintiffs

**COMPLAINT FOR DAMAGES**